# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EVELYN BENDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 7326 |
| ) | |
| BELLOWS AND BELLOWS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Bellows and Bellows' ("Bellows") motion for summary judgment and motion to strike. For the reasons stated below, we grant Bellows' motion for summary judgment and deny Bellows' motion to strike as moot.

## BACKGROUND

Plaintiff Evelyn Benders ("Benders"), who describes herself as "an African-American female," alleges that she began working for Bellows in 1996 as a legal administrator. (A. Compl. Par. 3, 5). Benders contends that in July 2003, she was demoted and replaced by a younger white female. Benders acknowledges that her

1

salary was not reduced at that time. Benders alleges that in May 2003, Joel Bellows, the owner and president of Bellows told her to start looking for another job, but that she could keep working for Bellows until she found other employment.

Benders alleges that on February 17, 2004, she filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was discriminated against because of her race and sex. Benders claims that after she filed the EEOC charge, Joel Bellows became hostile toward her and made her working conditions "increasingly difficult." (A. Compl. Par. 7). Benders claims that on April 12, 2004, she had a conversation with Joel Bellows, during which he referred to her charge as an "awful EEOC charge." (A. Compl. Par. 8).

Benders alleges that she was terminated by Bellows on April 20, 2004, for "causing too many problems." (A. Compl. Par. 9). On August 31, 2005, the court granted Benders leave to file a second amended complaint, in which she alleged a claim of retaliation for filing an EEOC claim under Title VII the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e *et seq.* (Count I), a claim of retaliation under Section 510 ("Section 510") of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1140 *et seq.* (Count II), and a claim of retaliatory discharge under Illinois common law (Count III). On November 4, 2005, Bellows filed the instant motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must consider the evidence as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the

non-moving party. *Anderson*, 477 U.S. at 255.

## DISCUSSION

I. Retaliation Under Title VII (Count I)

In Count I, Benders claims that Bellows "intentionally terminated Ms. Benders in retaliation for her having a charge with the EEOC, in violation of Title VII." (A. Compl. Par. 9). In order to show retaliation pursuant to Title VII, a plaintiff can proceed under either the direct or indirect method of proof. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). In the instant action, Plaintiff does not argue that she can prevail under the indirect method of proof. (Resp. 2, 5). Under the direct approach, a plaintiff must show that: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Id.* A plaintiff can establish a causal connection "by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005).

In the instant action, it is undisputed that "J. Bellows told Plaintiff on May 14, 2003 [sic] that Plaintiff was being 'terminated.'" (P's Resp. SF Par. 12). In fact, Benders states in her complaint that "[i]n about May of 2003, Joel Bellows . . . told [Benders] that she should begin looking for another job [but that] she would retain her job with the firm until she found another job with which she was satisfied." (A.

4

Compl. Par. 5). Benders also stated that her job had been eliminated in a January 2004 EEOC questionnaire. (Mot. Ex. 10, 1). Benders does not contest that her replacement was hired by Bellows in June 2003, or that Benders was told on February 11, 2004, by Joel Bellows that she had "'approximately' five weeks" left at the firm. (P's Resp. SF Par. 16, 20). Benders does not dispute that she was told that she needed to seek other employment. (P's Resp. SF Par. 30). Pursuant to Local Rule 56.1, Benders has not disputed that in January 2004, Benders told another employee of Bellows that she "planned on 'taking her time' to find a job," and instead only disputes that her statement was unknown to Joel Bellows. (P's Resp. SF Par. 31). Benders also does not dispute that on February 12, 2004, Benders called the EEOC to say that she wanted to file a charge of discrimination, that on February 17, 2004, Benders filed an age and race discrimination charge against Bellows with the EEOC, and that Benders was finally told on April 20, 2004, "to leave the firm." (P's Resp. SF Par. 23, 24, 40).

The Supreme Court has made it clear that "[e]mployers need not suspend previously planned [employment decisions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark County School Dist. v. Breeden,* 532 U.S. 268, 272 (2001); *see also Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 811 (7th Cir. 2005)(citing *Clark County*). Given the undisputed facts in this case, no reasonable trier of fact could find other

than that Bellows made the decision to terminate Benders in May 2003, almost a year before she filed anything with the EEOC. Benders has not pointed to any evidence that she was terminated because of her EEOC claim. Rather, the undisputed evidence clearly shows that Bellows went out of its way to accommodate Benders while she found new employment after she was fired in early 2003. Accordingly, no reasonable trier of fact could find that Benders has established a causal link between her termination and her EEOC charge and, thus, we grant summary judgment to Bellows on Count I.

## II. ERISA Claim (Count II)

Benders alleges that in December 2003, Bellows changed her employment status from an employee to an independent contractor in order to avoid paying a contribution to Benders' 401(k) plan, in violation of Section 510 of ERISA. Benders also alleges that she was terminated because of her attempts to "regain her status as an employee" and because of her threat to file a complaint with the IRS. (A. Compl. Par. 23, 26). Under Section 510, it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U.S.C.A. § 1140. The Seventh Circuit has held that a plaintiff must show that his employer had

6

the "specific intent to deprive an employee of his plan rights" and that "[n]o violation will arise where the deprivation was simply the consequence of a decision that had the incidental effect of affecting an employee's benefits." *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005). While a plaintiff can show a violation of Section 510 under either the direct or indirect method of proof, Benders has stated that she is proceeding under the direct method, which requires direct evidence that Bellows terminated her or changed her employment status "to avoid paying benefits to which [she] would have been entitled had [she] continued working" at the firm as an employee. *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 576 (7th Cir. 1998).

We found earlier in this opinion that Benders was not terminated in April 2004, as she alleges in Count II. Instead, Benders was terminated in May 2003. (P's Resp. SF Par. 12). Therefore, Benders cannot show as a matter of law that she was terminated in April 2004, in order for Bellows to avoid paying contributions to Benders' 401(k) plan.

Section 510 does not only apply to an employee's termination, but can also apply to situations in which an employer forces its employees to be reclassified as independent contractors in order to avoid paying benefits. *See McGath v. Auto-Body North Shore, Inc.*, 7 F.3d 665, 669 (7th Cir. 1993)(stating that "we must be mindful that § 510 protects the employee not only against the classical forms of employer harassment that might occasion the loss of benefits, but also against the more atypical forms of employer misconduct that can produce the same result"); *Seaman*

*v. Arvida Realty Sales*, 985 F.2d 543, 547 (11th Cir. 1993)(finding a violation of Section 510 when an employer required employees to become independent contractors). In the instant action, Benders claims that by making her an independent contractor in December 2003, Bellows discriminated against her "in order to interfere with her attainment of a benefit to which she was entitled, in violation of Section 510," namely the one-time contribution by Bellows to its employees' 401(k) plans. (A. Compl. Par. 25). Benders, however, does not dispute that she "agreed not to get a 401(k) contribution for that year," nor does Benders dispute that she "agreed that, instead of the 401(k) contribution in the amount of $3,360, the Firm would pay the default judgment [of more than $7,400] that had been entered against her for non-payment of student loans." (P's Resp. SF Par. 70-74). Benders' admissions show that Bellows paid Benders a much larger sum than she was due from the 401(k) contribution, and that Benders agreed to this substitution. Accordingly, no reasonable trier of fact could find that Bellows had the requisite specific intent to deprive Benders of a benefit in violation of Section 510. *See also Ries v. Humana Health Plan, Inc.*, 1995 WL 669583, at *6 (N.D. Ill. 1995)(finding that the doctrine of accord and satisfaction applies to ERISA claims). Therefore, we grant summary judgment to Bellows on Count II.

III. Retaliatory Discharge (Count III)

Bellows moves for summary judgment on Count III, in which Benders alleges

retaliatory discharge under Illinois common law. Under Illinois law, "[a] discharged employee may sue her employer for the common law tort of retaliatory discharge if her discharge was *in retaliation* for certain actions that are protected by the public policy of Illinois, including retaliation for complaints about an employer's unlawful conduct." *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936 (2002), 940-41 (7th Cir. 2002)(emphasis added). In the instant action, Benders argues that she was terminated in April 2004, because she threatened to file a complaint against Bellows with the IRS. However, as we found earlier in this opinion, Benders was terminated in May 2003, and was told in February 2004, that she had approximately five more weeks left at the firm. (P's Resp. SF Par. 12, 20). Therefore, no reasonable trier of fact could find that Benders was terminated in April 2004, in retaliation for threatening to file an IRS complaint and, accordingly, we grant summary judgment to Bellows on Count III.

IV. Motion to Strike

Bellows has filed a motion to strike certain statements contained in Benders' Local Rule 56.1 statement of additional facts, claiming that the statements are either irrelevant to the instant motion or that they are inadmissible. Because the court did not rely on these statements in resolving the motion for summary judgment, Bellows' motion to strike is denied as moot.

## CONCLUSION

Based on the foregoing analysis, we grant Bellows' motion for summary judgment in its entirety, and deny Bellows' motion to strike as moot.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 24, 2006